Health Plan, etc. Thank you, Your Honor. I'm Barbara Mather and I represent Hanley Connolly and John Summers and I am speaking on behalf of all of the lawyers in this case, although as you know, the other individual defendants have reserved time as well. I should tell you and all people that the panel has decided that we have jurisdiction, so there's no need for any of the lawyers to be concerned about whether this is an appealable order. Okay. Thank you. I would like to reserve three minutes for rebuttal. And you're doing the rebuttal for everybody? I am doing the rebuttal for everybody. One rebuttal. Okay. Let me ask you right at the outset. Is it your position that no lawyer committed any conduct that a district court could reasonably sanction? Or is it that the sanction was disproportionate to the conduct? It is my position, Your Honor, that on this record, there is not a basis for sanctions. Any sanctions? Yes, Your Honor. And that is true, Your Honor, in this situation because as you know, unlike many sanctions cases, this is not a case where we have any failure to obey an order. This is not a sanctions case in which any motions to compel were filed. The opinion below... There was a motion to compel, right? I'm sorry, there was a motion for sanctions, excuse me. There's a motion for sanctions, but there was no motion to compel discovery, Your Honor. You're not asserting, are you, that the court was without power in the absence of a motion to compel to decide that there were violations of the rule, are you, Ms. Maddow? I am not, Your Honor. Okay. So if we can get past that and deal with what Judge Gardner actually did, which was after a nine-day hearing, say, I find numerous instances of what I, after hearing evidence, determined to be deliberate delay, obfuscation, efforts to engage in a war of attrition and ramp up the costs on the other side, that's the record we're dealing with. So instead of talking to us about what there isn't here, tell us why that finding of that set of facts found by district court after an evidentiary hearing is clearly erroneous and therefore not a sound basis for sanctions. Well, I will, Your Honor, but the assumption that there is solely a clearly erroneous standard here, I think, is wrong. There is in this record, in addition to the fact that there is not a foundation in the record for the judge's findings, there is also, there are also two other errors which I believe are subject to plenary review by this court. One is the application of the appropriate legal standard under 26G, that is, whether there was substantial justification or whether there was bad faith, and the secondly is whether the procedure applied below meets with the standards of due process. But that's not the question. You may certainly proceed and argue how you wish, but my question is, you're saying that when the judge finds certain things, as a matter of fact, i.e., I find that the responses by, and I'm not intending to single people out. I understand, Your Honor. In terms of culpability, just because they're in the record, that Mr. Summers, in this instance, I didn't believe his testimony and I thought he was deliberately obfuscating and that, in fact, his actions were calculated to hide the ball. Okay? That, that, are you saying that's not a finding of fact? Your Honor, in these cases, for example, if you go back to the Bowers case, which this case, this court decided fairly recently on a sanctions issue, there is a standard of specificity in terms of what is it that the individual lawyer specifically did that violated the rules, and that has to be the basis for sanctions. A sort of general disbelief in Mr. Summers' testimony does not establish anything. What one needs to have is a basis for finding sanctions, and what I had proposed to do, Your Honor, and you tell me whether it will help you in answering this question, is to talk, for example, about the judge's conclusions on motions and appeals as being part of the basis for sanction, and to talk about the Synertec situation, which is part of the basis for sanction for Mr. Summers. If a judge says that X is not credible, how are we to overturn that finding? If it's X, Your Honor, that's fine, but what the judge said here is, I don't find any of the lawyers credible, period. He didn't say, I don't find them credible on... As I recall reading the opinion, he specifically focused on two or three attorneys, is that correct? He did. He focused on Mr. Summers and Mr. Girofato. Right. But as to those, it was a blanket finding, Your Honor. It wasn't a, I find this issue not credible, I find this issue not credible, I find this issue not credible. Why don't you proceed the way you said you wanted to proceed? I will. Until we interrupt you. Until you interrupt me again. Right. Let me start with the motions. One of the things that the judge found below was that the defendants had engaged in, as he called it, incessant motion practice. And that was part of his finding as to why the individuals and the law firms, and for that matter, the clients, had violated 1927 and 26G, or 1927 in particular. First, there are a number of things wrong with that as a basis, and it's a good illustration of the problems with the opinion below. One of them is that the parties had no notice that the judge was, in fact, going to consider that as part of the issue. The first notice is when it shows up in the opinion. So the record, in fact, has nothing in it about the pattern of motions. Secondly, if you have a motion for sanctions, and you give X and Y reasons as to why you think there should be sanctions, and a judge grants sanctions, albeit on reason Z. Right. There's nothing wrong with that, is there? Yes, there is, if there's no notice and an ability to defend. For example, the defendants did not come in here, Your Honor, and say, as we have in the briefs, because there is a docket in this case that you can refer to, we only filed two motions. We only filed four motions, and we won two. The problem that you have is that you've got extremely good counsel in a nine-day hearing with a lot of briefing, and the fact, to me, it's a little hard to say that a judge can't go off on another reason to get to the same result given by the class counsel. And which is on the record. Correct. I mean, the filing of motions is something that's on the record, Your Honor, but it's not something that anyone suggested was a basis for sanctions here. It is, in fact, something that, as you all know, is permitted by the rules. Well, hold on just a second. When you say nobody suggested this was a basis for sanctions, are you saying that in the two sanctions motions that were filed, there wasn't an assertion that dilatory motions practice had caused delay and undue expense? There was a suggestion, Your Honor, that general objections and delays in discovery, but there wasn't a suggestion that the motions practice was part of it. Itself was part of it. Did it become clear during the course of the testimony over nine days that that was something that was being put in front of the judge? There's nothing on the record, Your Honor, about the pattern of motions. No testimony about motions? No. There's nothing. Okay. Okay? And the suggestion that the defendants, in addition to it not being anything on the record, there is no consideration by the court as to whether, in fact, motions were appropriate or not. There's no indication as to whether they were substantially justified, frivolous, whatever it is. Secondly, it is clearly erroneous, and this goes back to your point, Judge Jordan, that the defendants were engaged in incessant motion practice. The docket tells us what the motions were. Stevens and Lee filed two motions for reconsideration of the magistrate, prevailed on one. Hangley filed four in three years, prevailed on one, lost on two, one was never decided. Stradley filed two, prevailed on one. This is a pretty normal batting average for these kinds of motions. There's nothing about it that suggests that they're frivolous. And the court completely ignored the plaintiff's pattern of conduct. During the same period, the plaintiffs had filed seven motions for sanctions before the magistrate lost them all. During the period that the case was in suspense for a year, from 04 to 05, something like 19 motions piled up, of which plaintiffs filed 13, third parties two, the defendants four. It's just not a pattern of incessant motion. Thirteen motions is not a lot? Thirteen is the plaintiff's right. That's not, the defendants are four. Thirteen might be a lot. You were saying earlier that you would specifically address Synertec. And that, I certainly understand from your paper some of the things that you said so far. But speak, if you would, to that specific example. When you say that he only made general findings about problems. This is an area where there are more specific findings, Your Honor. So let me address it. So what are we to do with those findings? When he looks and he says, as he does in paragraph 9 and in paragraph 20 and in paragraph 23, look, this is what the record and the testimony tells me. That the Keystone did have access to the Synertec data. They could have gotten it on demand. And I'm now paraphrasing. There are specific findings of that. Are you telling us that there's some standard other than clearly erroneous on which we can review those findings? Yes, Your Honor, in part. Part of it is clearly erroneous, depending upon whether it's evidentiary. Part of it is an error of law in our view. But let me talk about it and we'll get to each, okay? On the Synertec documents, the court begins with the fundamental premise that Mr. Summers interfered with the plaintiff's attempt to get data and documents and information from Synertec. And he makes that... Does he begin with that or does he end there? Well, he ends there, but he says it in his opinion as part of his reason for the whole manipulation of the Synertec evidence. There is, Your Honor, and it's a fundamental part of his analysis, there is zero evidence of that. The only two people, the only three people who testified about contacts between Mr. Summers and Synertec are Mr. Summers and two individuals from Synertec, Mr. Loescher and Mr. Lieberman. And in their testimony, which is at 6330 and 6305 of the record, they said they made their own decisions, they were not influenced in any way, they didn't withhold anything, they didn't do Mr. Summers any special favors or provide special documents. There is no basis for that finding. Now, with respect to the documents, the court... Many documents appeared at the last minute. Well, I'd be happy to do the last minute, but let me finish Synertec first. I think I'd better do that. With respect to the documents or the access that the court thought Keystone had to Synertec, there are several answers, Your Honor. One is that it's clear from the record as a whole that what plaintiffs were asking for is not existing documents, but in fact reports, reconstruction of records, additional information in terms of reconstruction of old data and programming that needed to be done. That's all factual stuff, right? You're talking what seems to me to be classically factual information. What could Synertec do? And what, as a matter of fact, was the power that the lawyers for Keystone could do in terms of obtaining that information? Is that not factual kind of info that the district judge on the scene is best suited to say yea or nay to? Well, except in this particular situation, the facts are well established because there was a long series of negotiations among plaintiffs and Synertec on how to get this information, which culminated in an extensive hearing in 06, in which Synertec finally agreed to produce the same data that plaintiffs have been asking for previously and had to do programming and data reconstruction that was $100,000 worth of work in order to do it. So there is a record, but there is also another issue, Your Honor. And the other issue is that the defendants objected to the production of this material on the theory that they did not have possession, custody, or control of it. Under 26G, which is one of the basis for sanctions, they have to have a substantial justification for doing that, either under existing law or extension to existing law. There is authority, and there is authority in this circuit, in the district courts, in the Inline case, in the Nabartist case, which is a judge final opinion in Delaware, that if the information is held by a different corporation, and there is no question Synertec is a different corporation, the fact that you have a contractual right of access to it is not sufficient to give you possession, custody, or control. Am I correct that the district court did not consider the substantial justification standard? It did not at all. It never addressed the question. Was it raised by the parties in the briefing or in the hearing that that was something the district court was responsible to be looking to, or was that something the parties were responsible to assert, that is, we had a substantial justification? Well, we did brief the substantial justification, Your Honor, below. Yes. And we did say there are reasons. This is the objection that was made. It has a basis in law. The court never considered whether the objection was justified, and never addressed the question of whether 26G standards were met. It is, as you know, not required that we win that. It is simply required that you have a basis for doing it. And given those decisions, I think there is an adequate basis. What is the record as to whether the general objections were dismissed or stricken? The record on the general objections is there was a motion to strike the general objections that was filed more than a year after the initial general objections were filed. And the general objections that we're talking about here, as Your Honors know, are pretty vanilla. Too broad. Privilege, too broad. Rule 26 kinds of basic objections. I did some of this work. I remember. I think I always used to lose those motions. Nonetheless, they're very general objections. They're very generally used objections. As I understand it, the district court took the position that they were dismissed. They were not. There was a motion to strike them in connection with the magistrate. The magistrate did strike them, Magistrate Rappaport. That was appealed to Judge Gardner. And in a fact which does not appear in Judge Gardner's opinion, Judge Gardner reversed the magistrate as being clearly erroneous in his determination, vacated the order so the general objections remain in place, and sent the general objections to the special discovery minister. And part of that, Judge Sloboda, also bears on the question you asked me. Why were things produced piecemeal? Some of the piecemeal production I think is because people found things late. That happens. It's very coincidental that all those documents appeared just as, wasn't it, when the special discovery master was? Yeah, for all three defendants. Yeah, all thousands, thousands. In some instances it meant late, late at night on the night before. There are two reasons. Isn't a district court entitled to say there's something wrong here? I don't think so in this circumstance. Let me try to explain. There are three groups of documents, or two fundamental groups of documents for my particular client. And I'm going to let my colleagues address the productions they made because they're more expert on it. But with respect to Keystone and Hangley, one of the productions, the 24 boxes that is referred to, there's testimony on that. And it's testimony by Mr. Stapleton at the hearing. And it's the only, the only testimony on the 24 boxes. And what Mr. Stapleton says is, we had offered them to plaintiff before. They had said they weren't interested in looking at them because they were individual provider documents. We knew we were going to use them in the class action hearing, which was coming up, so we offered them to them again and produced them. This is not a last minute production. This is a renewal of something that was rejected earlier. With respect to, and that's the only testimony on it. It's not like there's a contest. That's it. With respect to the additional productions, the judge had assigned all of these pending motions about discovery disputes to the magistrate, or to the special discovery master. She, to her credit, was working through them. She was reviewing privilege laws. How come you didn't ask her to testify at the nine day hearing? How come? How come she did not testify? I don't know, Your Honor. She did not. And she was working through them, and issuing directives, forging compromises, achieving agreements, and as she was doing that, things were being produced. It was a rolling process. It went on over time. And that was the basis of the production. So, the judge's impression, I would say was stronger than impression, it seems to be something he states pretty emphatically, that he detected a pattern of late production, eve of hearing, or eve of deposition, production of documents, is without a foundation in the record that was before him? It's without foundation, and it's an example of one of the things Judge Jordan is wrong with this opinion. I can explain to you... You're talking about the sanctions order of September 28th, right? Yes. Which opinion? Yes, I'm sorry. There are three sanctions orders, I guess. I'm talking about September 28th, yes. It's one of the things that's wrong with this opinion. I can talk you through what the actual evidence is on the Keystone production, but what the judge did, rather than isolate each individual and the acts, and what was withheld, and what judgment errors were made, or what lack of substantial justification may have existed, what he did instead is he put everybody together and said, you're sort of all in this together, and I didn't like the way you behaved, and there ought to be a sanction. That is... With careers here, we're dealing with reputations that last for a long time, on some lawyers in their prime. This is... They deserve, and they are entitled, under Bowers and other opinions, to have individual consideration of exactly what each of them did under the circumstances. That was not done here. So are you suggesting, then, that what ought to happen here is that the district judge ought to get another crack at it? Because clearly, in the district judge's view, this is not something that he was prepared to see go quietly into the night. You folks had come to an agreement to have the thing vacated, and would have saved, looking across the room here, these are all lawyers, a whole lot of billable time in this courtroom. But evidently, he felt like the quality of the work that was being done here was detrimental to the system itself. Detrimental enough that, in the words of several of the briefs, he produced what has been characterized as scathing. I doubt he would use that word. But a pretty pointed opinion. So he wasn't prepared to just see his evaluation of what he thought was bad behavior, that is systemically bad, be quietly put aside. If we agreed with you that he had not done what he needed to in terms of specificity, would we send this back and say, there may be sanctions on the behavior here, you just need to be more specific? What's the right answer? Well, Your Honor, there were nine days here to prove this. And there is not support in the record for virtually all of the findings. There's a plaintiff's submission, the judge lifted it pretty much whole. He got some other ex parte information. He made not, I mean, maybe there were hoops that weren't jumped through, but he made 93 findings of fact in a 77-page opinion. I understand that, Your Honor. But if one looks not just at the findings, but what is allegedly in support of them, the evidence is often directly to the contrary. Judge Jordan suggested at the beginning that we would have to use a purely erroneous standard, I guess with respect to the findings of fact. But if we look at the sanctions order as a whole, is that our standard, or is it abusive discretion? Well, your standard is abusive discretion, but in addition to that... Where do we get that from? I mean, what's the basis for your statement that we review... Prior opinions of this court would say abusive discretion. I think they're cited at page 35 of our brief, Your Honor. I'm not sure I remember the names, too, I think maybe one of them. But the... And it's not only an abusive discretion issue, Your Honor, but it is also a question of did he give... Did he consider whether, in fact, the conduct of the lawyers, for example, the objections on possession, custody, or control, were substantially justified? Did he consider whether the objections, the general objections, were substantially justified? Plaintiffs made the same ones in the case. Those are issues that are absolutely not mentioned in all, however many pages it is, Judge Ambrose. They're just not there. They have to be there. That's the standard. So that's a plenary review. With respect to due process, that's also a plenary review. The fact that the defendants didn't have notice of some of the claims, I haven't discussed it with you, perhaps one of my colleagues will, but the fact that there is ex parte communications here and invitation to the plaintiffs but not the defendants to put extra material in at the end of the hearing, those are also plenary matters. Let's assume for the moment that there are some hoops that should have been jumped through or some deficiencies in the district court's opinion. But assume also that it's clear to this district judge that at bottom the court imposed sanctions because it was fed up with the perceived discovery abuses and the overall litigation tactics of defendants throughout the entirety of the case. And that's based on a host of things that happened. Is there anything the judge can do in order to manage his courtroom to make sure that it's done better the next time? Yes. He can decide motions. At the point that he put the case into civil suspense in advance, a year ahead... He put it into civil suspense, the discovery was still ongoing, was it not? It was, but he was not deciding anything. He had seven motions pending. By the time of the end of the civil suspense, there were 19 pending. There's nobody really here to, you know, maybe there should have been somebody here on behalf of the judge here. But the point being that can't he do something by way of sanctions to be sure that the message is sent that this is not the way, this is not standard behavior? You can certainly issue sanctions if there is a violation, Judge Ambrose. But if you look at what actually happened here, there is not a violation. Thank you, Ms. Mather. We've been very patient and you've gone way over your time. So, thank you. Now, a whole bunch of you have asked for three minutes each. I'm going to hold you. We were very patient with Ms. Mather because she was talking on behalf of everybody. But three minutes is three minutes. Three minutes is three minutes. Okay, go ahead. I'm Matt Sinvita. I'm representing Capital Blue Cross in Keystone Healthcare Plan. I'm going to try to give a focused presentation in my short time on the basis upon which those corporate clients are sanctioned. That they each were held 25% responsible for the sanctionable conduct, a 50% total. Now, the Special Master Bloom reported in her second report on November 30 of 2005 that Keystone, quote, recently located, close quote, additional documents, 20 to 30 boxes, including several binders regarding its reporting system that plaintiffs had requested for approximately two years in connection with a 30B6 deposition. What took so long? I think that those type of documents  to produce on a timely basis, Your Honor. And I think that's exactly what happened here. There's nothing to contradict that anywhere in the record in this case. You know, I've had cases. I know you had in private practice cases. And many times, we know our obligations when things come up, they are produced on a timely basis as they are discovered, as they are received, pursuant to our obligations to produce them as they become available, as they are found. For two years? To wait two years to finally produce them? Well, I think that, you know, in light of the voluminous requests that were out there and all the various sources of information that were being sought with regard to that, Your Honor, I don't think that that is necessarily out of the order, out of line. And in cases I've had, I've seen that happen many times. Could the judge have reasonably decided that it was out of order and out of time?  I don't think he can unless he finds, one, that there is some sort of conduct or behavior that resulted in that. Two, that there was something improper with regard to that conduct. Or three, that there was some sort of prejudice that was sustained as a result of that, Your Honor. Just to jump to a couple more, because I already see my lights coming on here, and I'll try to keep to it. That there were very few reasons for this 50% responsibility. You know, in addition to the seasonable production, there was a suggestion that there was sanction for the general objections that counsel has already spoke about. I would just add that the order that was mentioned is in the record at 1122. That was in the November 2nd, 2005 order, in which the judge reinstated the general objections, and there was no finding by the court. There's no evidence in the record anywhere to say that they were somehow put forward in an improper, prejudicial, or violative way. And I know that the Bar Association has filed an amicus brief, which addresses this issue in a much more vigorous way. A couple more quick items, Your Honors. First of all, capital was sanctioned for failure to search for certain audit documents. Now, again, there's no record support to support that conclusion. That was conduct that was submitted in the ex parte submissions after the record was closed at the sanction hearing on certain timelines that were requested by the Court Appointments Counsel. You got those right. I mean, you and others have called these, quote, ex parte materials, but unless I misunderstand, the record is asserted to be there was a phone call from a clerk that said, hey, you mentioned a timeline in the hearing, why don't you send it over? And that was sent simultaneously to everybody, the opposing counsel and to the Court. Have I got my facts right? Well, that's correct. That's why you keep calling it ex parte materials, as if the judge got a box of stuff secretly. Well, they were requested ex parte, number one, Your Honor. Second of all... Isn't a judge entitled to say, give me the backup for this? Or have the law court call. I mean, that's sort of, that's an all-time. Sure, but my point is just simply this, and I'll give a particular example with regard to capital. My point is that you have the ability to confront that evidence, talk about it, and have a hearing on it. That evidence with regard to these audit documents resulted in an exhibit that was never used at hearing, that the defendants never had an opportunity to respond to. I think that's pretty weak ground. I mean, it was referred to at the hearing, and the judge had the clerk call and say, could you give us the backup for what was stated at the hearing? The timeline was, but with regard to the audit documents, they were not. And that resulted in something called plaintiff's exhibit number 70, so the defendants never had an opportunity to confront or deal with, and that, I respectfully suggest, is a due process issue. Thank you, Mr. Sundin. Thank you. Thank you. Ms. Douglas? Good morning. Donna Doblik on behalf of Highmark. As your honors know, Highmark was sanctioned on only two grounds in this opinion. One, the allegedly late production of audit documents, and two, the assertion of the general objections. I'd like to use my limited time to focus on this production of audit documents. On the documents, again, the second report of Special Master Bloom, was that Highmark, she noted that Highmark had produced approximately only three boxes over four years, and then they located one box of documents at the last moment. Your honor, the four years is misleading. There were two years in which nothing happened in the case. The motion to dismiss was pending, and there were no discovery requests issued. The first discovery requests were issued in 2004. Highmark produced, located and produced the audit documents in October 2005, without a court order, without a recommendation of the Special Master, and there's no testimony as to what the volume of those were, other than they were a subset of this box that Highmark began producing in connection with working through this high-priority list of documents that the Special Master directed the plaintiffs to craft. This isn't a case where you have a witness testify, I was never told to look, I was never told to look in the warehouse, or worse, I found documents, but the lawyers didn't turn them over. The only evidence in the record here is that Highmark looked, didn't locate them, when they found this undetermined quantity of audit documents, they turned them over. It was not last minute, it was not in the dark of night, it was five months before the class certification hearing, two years before the close of discovery. The judge expressly found, in his opinion, that the plaintiffs were not prejudiced in any way at the class certification hearing, or otherwise, by virtue of getting these in October of 2005, as opposed to October 2004. The only evidence in the record that the court cites, and this is what is so nefarious about the court's adoption of plaintiff's proposed finding, is their proposed finding 70, that cites Plaintiff Exhibit 39, which is this letter from Ms. Girofalco, where she's talking about Highmark is resting on its specific objections to various requests, and we haven't searched for documents to which we've made specific objections. Plaintiffs twist that in their findings, which the court adopts in toto, to say we didn't search for anything to which we asserted a general or a specific objection. That's not in the letter. That's not in Ms. Girofalco's testimony. It doesn't make sense, insofar as boxes of documents had been produced prior to that time. It's a clear-cut case of there is no competing evidence. Even if the court... You've got a host of things that have been noted by the special master, and she is, by all accounts, a pro at this. For example, going back to the second report, the general objections filed by defendants were a major barrier to discovery. As long as the general objections were outstanding, it was impossible for me to require defendants to produce much of the discovery materials plaintiffs requested. And then the... Why don't you respond to that? Sure. Your Honor, the way this works, you have your general objections, which you then incorporate by reference, and then you address documents with individuals. Did the... Heimark didn't hide behind the general... Did the parties stop looking or producing when they had general objections out there? No, Your Honor. No, Your Honor. The general objections were never the basis for not searching. Well, the district court certainly got that impression. But it's not in the evidence. This comes from plaintiffs' proposed findings, but there is not a shred of testimony to that effect. As far as Heimark was concerned, the only testimony... Even if he doesn't believe Ms. Girofalco, then there's no evidence. When did you start doing privilege logs? Your Honor... I mean, your client. I don't know. Privilege logs didn't form a basis for sanctions. The court expressly found that the privilege logs were not a basis for sanctions. And in fact, some of the document production that Your Honor referred to in terms of being, you know, so-called late or on the last day, there are plenty of findings of fact in that regard that also don't lead to sanctions, with good reason. These were documents that were being produced as and when the special master produced them. And yes, it was after the technical class certification discovery deadline, but the parties were still working with the special master as the special master in the court recognized.         I'm going to be speaking to you in a moment. I'd like to make two brief points in my three minutes. The first is, I'd like to touch briefly on the issue of credibility findings because it's an issue that pervades the district court's opinion. With regard to credibility, it's important to note that the case for sanctions  and Stradley Ronin was put on exclusively through cross-examination through two witnesses. The plaintiffs called Ms. Girofalco first in the case, and the plaintiffs testified for a day and a half. They called very briefly an in-house attorney from Highmark. Ms. Girofalco was very clear in her testimony. She denied having done anything wrong, having delayed discovery. She testified that the objections that she made, the positions that she took, were done in good faith because she had a solid belief and basis in it. Couldn't the district court disbelieve that? Absolutely. Absolutely, Your Honor. Say, I just can't find you credible. I think the court can. I've been working on this case for many years and it just doesn't add up. I think the court can. We were disappointed in that finding, but that's the province of the district court. But what the court cannot do, Your Honor, is then take that creditability finding and draw the adverse inference from it in the absence of other evidence. Which adverse inference? Well, many of them throughout the opinion. For example, a good example... Well, if the district court says, I didn't find you credible, why can't the district court proceed on that basis? They do it all the time. That alone is not enough for sanctions. The plaintiffs have a burden of proof of coming forward to prove their allegations and it's not sufficient for them to put someone on the stand, have that person deny it, and say, well, Your Honor, you should disbelieve that testimony and therein lies my proof. Well, let's use the example of the general objections which have been discussed a lot  of the amicus brief. It's posed in the amicus and by some of the appellants that the judge made some statement that general objections are not sufficient or in and of themselves improper, but it looked to me as if what the judge had actually said was that there was a use of general objections as a tactic for delay as a means    Judge Ambrose made a moment ago to the Special Discovery Master seems to indicate that maybe the Special Discovery Master was not able to provide enough evidence that the Special Discovery Master felt that way too. Is that not affirmative evidence from which the district court judge could say not just that I don't believe you, but that I think there was deliberate hiding of the ball and the use of general objections as a way to defeat the system? Not in and of itself, no Judge, because the conclusion that the court draws, the conclusion that you refer to by the Special Discovery Master, is just a conclusion. It's based on nine days of evidence, including testimony as you just noted. And supervising the case for years. And then saying, look, it's not that the general objections are in and of themselves somehow bad, it was the use of these objections as a tool. And my experience in this hearing and hearing people leads me to think that's what happened, not what they said happened. Are you suggesting that in order for the district court to find that these were being used badly, somebody had to come in and say, here's the smoking gun, here's the memo that says we're going to  objections. I would suggest that what he needed was more than disbelieving Ms. Yurofalko's testimony that she asserted the general objections for legitimate purpose. Are you telling us that defendants never used general objections as a trial tactic in discovery? There's nothing in the record that would support that, Your Honor. That is what I'm saying. But what the special discovery master did not do and what the district court did not do was drill down behind that and find out whether or not documents were withheld on the basis of general objections. What happened was the special discovery master took the objection. How would that work? As a practical matter, how would that work? Are you saying the district court judge had to have affirmative evidence that the general objections were being misused, some direct testimony or document? Isn't the only way you could ever get to a holding like this about the misuse of a discovery tool through circumstantial evidence? Well, I agree perhaps through circumstantial evidence, but here's where it was lacking. When the special discovery master got involved, she noted that general objections had been a problem. The plaintiffs had been harping on them for a long time. The plaintiffs would not address specific objections and said we're not going to get to any of that until we deal with general objections. The defendants stood by their general objections and you've heard that the issue went to the magistrate judge, went up to the district court and then came back down and was referred to the special discovery master. She took the general objections off the table and that is not what led to a flood of documents coming forward. What happened then was the special discovery master began to look at objection by objection, request by request, what are you asking for, what is the objection, she would make a ruling, progress was then made and documents were produced. But it wasn't in response to suddenly general objections were off the table and documents come flooding forward. Thank you.    the court, Lawrence Fox on behalf of Daniel Hewitt, Jeffrey Fowler, and the plaintiffs, please stand and be recognized. Thank you. I hear you, Judge Jordan, when you say can't the judge get upset about how things are going and end up imposing sanctions. The judge may do that. The judge could get upset but there have to be standards. In this case, as to Stevens and Lee, the actual factual findings, quote findings that are made as to  sanctions were  as predicted by the record. First, Stevens and Lee engaged in incessant motion practice. Nearly every order was appealed. You've already heard one of two was appealed. They appealed two and they won one, five hundred batting average. They were accused in the sanctions opinion of failing to conduct discovery during civil suspense. The record will demonstrate they produced thousands of documents. These were depositions of important documents. They basically tagged along with general objections and later specific objections. They produced privilege logs on a timely basis. The judge said and sanctioned them for failing to produce privilege and general objections. And, Your Honors, they never withheld a document on the basis of that. So how does Stevens and Lee end up being held in here? Two different things are done. One, there is a blanket determination statement that includes my clients. There is not a specific piece of testimony that is said to be incredible. The judge makes this blanket assertion and then improperly in violation of the Supreme Court decision in    So there is a separate responsibility. Look through the opinion, look how many times it says all defendants, all counsel, all did this. And in the case of my clients, two things happened. One, they are assigned responsibility for the conduct of other lawyers and sanctions have to be imposed lawyer by lawyer,  act by specific client. Second, they are assessed for the responsibility for a non-client. Keystone was entitled to be represented and Stevenson Lee was not entitled to get involved in that representation. As we know, separate corporations are entitled to have separate representation. There is no basis for sanctioning Stevenson Lee. Thank you. Thank you. I want to say first that I think what we should have done, it occurred to me somewhere along the way, is we should have asked for an amicus to represent the judge in this case and we didn't do that. So that, and I think if you're here representing the judge in a sort of pro bono, basically you don't have any fish to fry in this case. We have nothing of  to gain, Your Honor. However, when a lawyer makes a, good morning, excuse me, my name is Anthony Bocchino. Anthony Bocchino. When Dr. Greider's lawyers made these motions to sanction, they made them pursuant to the Supreme Court authority in the National Hockey League made it very clear that the purpose of discovery sanctions is twofold. First, to sanction and reprimand the lawyers who are involved individually. But just as importantly, just as importantly, and maybe more so, to send a message to all those others who might tread the same path. When this matter was filed, of course, there was an outstanding cost that were going to be assessed. They never were, as the Court is aware. And at the hearing where the fees of the class counsel were determined, Judge Gardner was very particular in getting the assurance of Mr. Jacobson, which he got from Mr. Jacobson, the lawyer for Dr. Greider, that should he decide not to vacate this sanctions order, that that matter would be fully represented by the appellees, Dr. Greider. Mr. Jacobson willfully took on that burden consistent with the teachings of Dr. Greider,             the lawyer for Dr. Greider, which he got from Dr. Jacobson, the lawyer for Dr. Greider, and he was not going to vacate something like his findings were, support the various findings, etc. Is there some inconsistency? Yes, there is, Your Honor. I think there is some inconsistency, and in fact, as to that one matter, I believe that Judge Gardner may very well have been in error, that when there was a specific statement by the magistrate judge,  was an admonishment. The magistrate judge said it was an admonition. Admonition, but it was not a sanction, that he should take him at his word. Wasn't the district court in legal error in using Rule 37c 1 to sanction attorneys when Rule 37c 1 doesn't permit sanctioning attorneys? Yes, to the extent that the order is read that the judge is sanctioning lawyers pursuant to Rule 37c 1, of course, that is an error. So that there were legal errors or factual errors in the district court's opinion. Don't you have to conclude? There were some, Your Honor, but the real standard here is there a permissible view of the facts that supports the findings of fact and conclusions of law as this judge in  case. Just on Rule 37, I mean, it seemed to be three different readings here. On JA6, the order notes that all defendants are sanctioned under Rule 37, and that doesn't apply under 37c. But JA87, well, JA87 says, beginning of the opinion, says only the parties are sanctioned, which is permissible. But then JA116 and 117 notes that the parties in the council are sanctioned, so it appears there's a problem there. I believe it was the intention of the district judge, Your Honor, to sanction only the parties under Rule 37. This is an experienced district judge, I believe. But then you also have 1927 and Local Rule 83.6. If that was what he intended, it's ultimately not what he said, right? Yes, there certainly is, Your Honor, but I keep coming back to the notion that in this court that the judge is to have his factual determinations given some deference. Well, was it reversible error for the district court not to consider the substantial justification standard as part of Rule 26G? I do not think so in that circumstance, Your Honor. These, with regard to the Sinertak matter, Sinertak was in the possession of Keystone documents. By their contract, Keystone maintained those documents. There's no question about that. That was a matter of contract, and they had access to it through the normal business processes of that contract. No, I don't see that in his opinion. Well, in his opinion, Your Honor, Judge Gardner took a look at the entirety of the processes that were engaged in by these appellants. Now, the argument keeps being made that this is solely done on the credibility of the witnesses. Not so. There was a series of events, including the objection to the special discovery master by these appellants, and then on the day or the eve of that first meeting with the special discovery master, not after any processes by the special discovery master, each appellant, each and every one of them, and each and every one of their lawyers came up with recent discoveries of evidence that was clearly within the ambit of the discovery. I think it is so strange a coincidence as to have present serious difficulties not only to this court, but also to the judiciary judges who was faced with that litigation tactic. How do you ... Accepting that that's affirmative evidence for the sake of the argument here, what's your response to the assertion made by several of your opponents here in this room that this is unfair for the judge to have said in essence a pox on you all based on what might have been the defalcations of one or the other of the parties or the attorneys in the case. And you might use just by saying              have been the defalcations of one or the attorneys in the case. And you might use just by saying that this is unfair for the   in essence        defalcations   attorneys in the case. And you might use just by saying have been the defalcations of one or the attorneys in the case. And you     is unfair for the in essence attorneys in the case. I mean all that  the difference is the profits and the delay of the process. And I think it's important to understand that there was a delay in the process. I think it's important to understand that there was a delay in the process. And I   delay in the process. This letter, and I can quote it for you, I have it in my notes. This letter was written in 2005, about a year after the last discovery request. She wrote this letter to our president and the president took her at her word. So when he made the credibility decision that he made, he was judging not Ms. Garifalco's credibility versus someone else, but the credibility of her writing versus her   taking the position legally. Actually, that position taken by Mr. Summers was the third or fourth position that he took with regard to a particular set of documents. He started off saying these documents were the basis for declarations that he represented to the judge to prove the invalidity of this part of the claim. He starts off, it's not under 26, then there are lay witnesses, then there are expert witnesses, and then he's got this privilege that he claims after he already produced the documents. Did the judge hold that this was not privileged? No. It's inappropriate for a party to say, I'm not going to log every communication I have with the lawyer I brought in to help me on this case. That's the ruling of the district court. I'm just trying to get you to say whether you agree or disagree. That ruling does not appear, though. It's certainly thinking that underlies it is implicated by the finding with regard to Mr. Summers and his clients on these shifting and contradictory positions. Is it legally justifiable if that was the position? I know of no basis whereby a lawyer can say that just because something was produced to me that it would be    product. Especially, Your Honor, if I may finish. When Mr. Summers came in and said that he was not satisfied with